# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00420-CV

---

### In re Commitment of David Delacruz

---

**FROM THE 21ST DISTRICT COURT OF BASTROP COUNTY**
**NO. 807-21, THE HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In this civil commitment proceeding, the State petitioned to have appellant, David Delacruz, declared a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code §§ 841.001-.151 (the Act). After a jury found beyond a reasonable doubt that Delacruz was a sexually violent predator under the Act, the trial court rendered a final judgment and entered an order of civil commitment. In three issues, Delacruz argues that the evidence supporting the jury's finding that he is a sexually violent predator is legally and factually insufficient and that the trial court erred by sustaining two objections to witness testimony. We will affirm the trial court's judgment and order of civil commitment.

## BACKGROUND

In November 2010, Delacruz pleaded guilty to four counts of indecency with a child by contact. S*ee* Tex. Penal Code § 22.011(a)(1). The court assessed Delacruz's punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for each of the indecency counts and ordered the sentences to run concurrently.

Before Delacruz was scheduled to be released from TDCJ, the State filed a petition in Bastrop County district court to civilly commit Delacruz as a sexually violent predator under the Act, alleging that he was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a). The trial court determined that Delacruz was indigent and appointed him counsel. Six witnesses testified at trial: Dr. Stephen Thorne and Dr. Sheri Gaines, the State's expert witnesses; Delacruz; a friend of Delacruz; Delacruz's brother; and Delacruz's wife. The jury found that Delacruz is a sexually violent predator, and the trial court rendered a final judgment and order of civil commitment accordingly. *See id.* §§ 841.062(b) (jury determination that person is predator), .081 (order on civil commitment of predator).

## DISCUSSION

A sexually violent predator is a person who (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). The State must prove beyond a reasonable doubt that the person it seeks to civilly commit is a sexually violent predator. *Id.* § 841.062.

Proceedings pursuant to the Act are civil in nature, but because the State's burden of proof at trial is the same as in a criminal case, we review verdicts in cases brought under the Act using the standard of review applied in criminal cases. *In re Commitment of Stuteville*,

2

463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Wirtz*, 451 S.W.3d 462, 464 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When reviewing a legal-sufficiency challenge to the evidence in a sexually violent predator case, we assess all of the evidence in the light most favorable to the verdict to determine whether a rational jury could find, beyond a reasonable doubt, each of the elements that the State must prove to support a judgment of civil commitment. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing factual-sufficiency challenges to the evidence in sexually violent predator cases, we weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that requires ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied); *see Wirtz*, 451 S.W.3d at 464-65 (noting that while factual sufficiency review has been abolished in criminal cases in which State's burden is beyond reasonable doubt, courts have continued to perform factual sufficiency review in sexually violent predator cases, and declined to decide whether factual sufficiency review remains available in those proceedings because evidence in case at issue was legally and factually sufficient).[1] The risk of an injustice is "essentially light" when (1) the burden of proof is beyond a reasonable doubt and (2) the evidence is determined to be legally sufficient to support the jury's finding that the defendant is a sexually violent predator. *In re Commitment of Gray*, No. 03-16-00662-CV, 2018 WL 911863, at *1 (Tex. App.—Austin Feb 16, 2018, no pet.) (mem. op.) (citing *Day*, 342 S.W.3d at 213). However, if in our view after

---

[1] The issue of whether factual sufficiency review is available in a case brought under the Act is currently pending before the Texas Supreme Court in its review of *In re Commitment of Stoddard*, 601 S.W.3d 879 (Tex. App.—Fort Worth 2019, pet. granted).

3

weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, we may grant the defendant a new trial. *Id.*

In his second and third issues, Delacruz claims that the evidence is legally and factually insufficient to support the jury's finding that he is a sexually violent predator. Specifically, Delacruz contends that because he was not permitted to tell the jury that it was required to find that Delacruz was a "dangerous sexual offender" with a "serious mental illness, abnormality, or disorder" that "subjects him to civil commitment" as opposed to a "dangerous but typical recidivist convicted in an ordinary criminal case," the jury's sexually-violent-predator finding was necessarily based on legally insufficient evidence. Delacruz argues that, because the jury was not "permitted to know" that the Act is directed at "a small, but extremely dangerous group of sexually violent predators who are not amenable to treatment," it "could not possibly have made an informed decision that [] Delacruz is part of that group." Delacruz also argues that, even if legally sufficient, the evidence is factually insufficient to support the jury's finding that he is a sexually violent predator.

Dr. Thorne, a forensic psychologist, testified that he had examined Delacruz and that his evaluation was based on principles of forensic psychology. Dr. Thorne provided the jury with the statutory definition of "behavioral abnormality" found in chapter 841 of the Texas Health and Safety Code. He stated that the methodology he employs is followed by experts in the field of forensic psychology performing behavioral abnormality evaluations. This approach includes reviewing prison records and offense reports, conducting a personal interview, performing psychological and actuarial testing, and applying the relevant research to the specific case. Dr. Thorne testified that in this case he also spoke with Delacruz's current treatment provider and reviewed Delacruz's juvenile detention records, statements provided by victims, and the

4

transcripts of depositions of Delacruz and another mental health professional, Dr. Sheri Gaines. Dr. Thorne testified that after completing the evaluation, his opinion was that Delacruz has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Thorne testified at length about the basis for his opinion. Dr. Thorne testified about the risk assessment he performed in order to determine the likelihood that Delacruz would commit an offense in the future. This assessment included considering both risk factors and protective factors. Dr. Thorne identified two main risk factors as (1) sexual deviancy and (2) anti-social illegal behavior in general. According to Dr. Thorne, anti-social behavior is a pattern or behavior over time "where people violate kind of rules or norms of society where they engage in rebellious kinds of reckless, irresponsible behavior, where they break the law, where they do things that might threaten the safety and well-being of another individual, or violate their rights." Dr. Thorne testified that Delacruz exhibited those tendencies by assaulting a girl when he was fourteen, resulting in his being charged with assault causing bodily injury. Soon thereafter, Delacruz was charged with assault after putting his mother in a chokehold and telling her how easy it would be to kill her. Dr. Thorne testified that Delacruz's records also reflect that he was suspended for bringing a knife to school in fifth grade and that as a juvenile he had engaged in theft, arson, drug trafficking, and exposing himself to females while in detention. Dr. Thorne testified that because this behavior started before adolescence, it raised a concern that the anti-social behavior was ingrained in Delacruz and therefore harder to modify. Dr. Thorne also testified that Delacruz's inability to comply with the terms or conditions of mandatory supervision was a strong indicator of anti-social personality disorder and constituted a significant risk factor when evaluating the likelihood that Delacruz would reoffend in the future. Dr. Thorne stated that anti-social personality disorder is a chronic condition and that his diagnosis of anti-

5

social personality disorder was not changed by the fact that Delacruz had a below-average number of disciplinary cases while incarcerated and seemed to be able to control his behavior in a structured setting such as TDCJ.

Dr. Thorne testified that the other risk factor, sexually deviant behavior, is "some type of sexual act, thought, urge, or impulse that can be harmful to another individual or to that person himself." Dr. Thorne characterized Delacruz's history of sex offenses beginning during his teenage years and continuing into adulthood as constituting sexual deviance, an opinion he formed based on his review of the details of the various sex offenses that he recounted to the jury. The first sex offense, which occurred in July 1998 when Delacruz was fifteen years old, involved his nine-year-old female cousin. According to the offense report, Delacruz was alone with his cousin and her brother at his grandmother's house. Delacruz and his cousin were watching a television program when a sex scene came on and the cousin reportedly said, "I can do that." When Delacruz told her she could not, the cousin took off her clothes and Delacruz fondled her breast and vaginal area. Delacruz took off his clothes and while his cousin straddled him he rubbed her vaginal area against his penis. Although Delacruz denied penetration, the records were inconsistent in this regard. Dr. Thorne testified that Delacruz has not been consistent in recounting the event to people including in his deposition and in his conversation with Dr. Gaines. At times, Delacruz has admitted fondling his cousin and at other times has denied it. Dr. Thorne testified that Delacruz has recently suggested that his nine-year-old cousin initiated the encounter, which Dr. Thorne found significant because it indicates that Delacruz continues to minimize his role in the incident. Dr. Thorne also found it significant that the incident occurred while the cousin's brother was in the house because that is consistent with impulsive, risk-taking behavior. Delacruz was found to have committed indecency with a child by exposure and was

given a two-year probated sentence. Delacruz did not successfully complete probation, which Dr. Thorne testified constituted anti-social behavior, a risk factor for reoffending.

The incident that resulted in the revocation of Delacruz's probation occurred when he was sixteen years old. While on probation, Delacruz committed aggravated assault with a deadly weapon against a 17-year-old girl who Delacruz had invited to go "camping" with him and his friends. While the group was watching a horror movie, Delacruz picked the girl up, put her on a couch, and while holding her down rubbed a kitchen knife against her vaginal area and stated that he could kill her. After the girl got up and left the room, Delacruz followed her, held the knife to her neck, started kissing her and told her the different ways he could kill her. Eventually, Delacruz and his friends left. Delacruz stated that he had been joking around after watching a horror movie and denied any sexual conduct. Delacruz was found to have committed aggravated assault with a deadly weapon, his probation was revoked, and he was placed at a Texas Youth Commission correctional facility. Although the offense was not charged as a sex crime, Dr. Thorne testified that he considered the assault to be sexually deviant.

Dr. Thorne testified that in 2010, Delacruz was convicted of four sexually violent offenses involving his eight- and nine-year-old nieces. The offense report stated that on several occasions Delacruz kissed his nieces on the lips and fondled their breasts and genitals over and under their clothing. Delacruz was sentenced to ten years' imprisonment for each of four counts of indecency with a child by contact. Dr. Thorne stated that Delacruz denied committing these offenses during his interview but that in his deposition he had admitted that he had touched his nieces' vaginas and breasts. Dr. Thorne testified that, while denying an offense is not necessarily a risk factor for reoffending, it does become relevant when determining how successful the offender will be in sex-offender treatment programs. Dr. Thorne stated that the number of times

7

Delacruz engaged in this activity with his nieces demonstrates a continued pattern of sexual deviancy. Dr. Thorne testified that Delacruz's reoffenses after having previously been found guilty of sex offenses demonstrates "persistence after punishment," another significant risk factor for reoffending. Delacruz was also convicted of secretly taking videos of his nieces while they were showering. Delacruz admitted to doing this and stated that he was told he could sell the images to help pay a debt he owed to a cocaine dealer. Delacruz also stated that he took the videos of his nieces because he was "intrigued by their bodies." Dr. Thorne stated that Delacruz's inconsistent explanations of why he took the videos demonstrated a lack of honesty about the incidents, which could hinder successful treatment. Dr. Thorne testified that the video incidents were also examples of anti-social behavior in that they demonstrated a lack of empathy.

Dr. Thorne testified that Delacruz, as a teenager, was diagnosed with bipolar personality disorder and admitted for treatment at a psychiatric hospital. Dr. Thorne stated that if a person already has a proclivity for committing sex offenses, a psychiatric disorder increases the risk of impulsive behavior and contributes to the risk of future sexual deviancy. Delacruz reported that at times he committed sexual offenses while under the influence of drugs. Dr. Thorne testified that substance abuse does not cause people to commit sex offenses but it can make people more impulsive and increase the risk of reoffending.

Dr. Thorne administered the Psychopathy Checklist (PCL) assessment for evaluating whether an individual is a psychopath and testified that he did not believe that Delacruz met the criteria for a psychopath diagnosis and the large majority of sex offenders are not psychopaths. Dr. Thorne testified that he also used the Static-99R to evaluate Delacruz. He explained that the Static-99R is a ten-item actuarial instrument commonly used by experts to assess a sex offender's likelihood of committing a future sex offense. Dr. Thorne scored

8

Delacruz as a "positive 4," a score that places Delacruz in the above-average range for reoffending and twice as likely as the "typical" sex offender to reoffend. Dr. Thorne testified that he does not use the Static-99R in isolation to evaluate the risk of reoffending but considers it along with the other risk factors and protective factors.

Dr. Thorne used the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) to diagnose Delacruz with pedophilic disorder, which he described as having a pattern of arousal by and sexual fantasies about children for a period of six months or more. Pedophilic disorder is a chronic condition that does not go away on its own and needs comprehensive treatment. Dr. Thorne also made a "rule-out" diagnosis of voyeuristic disorder, which he described as being aroused by watching others perform sexual acts for a period of six months or more. This "rule-out" diagnosis means that any mental health professional who works with Delacruz in the future should rule out whether he meets the criteria for voyeuristic disorder. Dr. Thorne did not diagnose Delacruz with this disorder because he was unsure whether it had persisted for the required six-month period. Dr. Thorne testified that information he received after conducting his evaluation of Delacruz might have caused him to make a "rule-out" diagnosis of exhibitionism.

Dr. Thorne also considered Delacruz's "protective factors," which are thought to decrease an individual's risk for committing sex offense in the future. These factors included that Delacruz appears to have social support, had previously maintained employment, and had not committed a sex offense against a "boy victim" or a "stranger victim," meaning a person Delacruz had known for fewer than 24 hours. However, Dr. Thorne noted that the presence of protective factors has not prevented Delacruz from reoffending in the past and there was testimony that in a letter written by Delacruz's wife, she seemed to be blaming Delacruz's nieces

9

for his adult convictions. Dr. Thorne testified that Delacruz is participating in a nine-month sex offender treatment program while incarcerated and is reported to be participating in a meaningful way. Successfully completing that program would constitute an additional protective factor. Dr. Thorne expressed concern, however, about Delacruz's plan to live with his wife and their 13-year-old daughter and stated that that concern should be addressed in treatment.

In sum, Dr. Thorne evaluated Delacruz as having two significant risk factors: antisocial behavior and sexual deviancy. Delacruz has reoffended after being punished for sex offenses and has demonstrated "persistence after punishment." Dr. Thorne testified that Delacruz has a pattern of rule violations, and although there are some protective factors in play, they have not historically prevented him from reoffending. Dr. Thorne testified that the totality of the factors presented led him to the conclusion that Delacruz meets the criteria for having a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Gaines testified as an expert forensic psychiatrist. Dr. Gaines stated that she conducted a standard psychiatric evaluation used in a forensic case by reviewing records and interviewing Delacruz. Dr. Gaines identified two risk factors for reoffending: sexual deviancy and antisocial lifestyle. Dr. Gaines reviewed offense records, witness statements, medical records, psychiatric records, juvenile records, and Delacruz's deposition transcript, and interviewed him for two and a half hours. Dr. Gaines testified that based on her training, education, and the evaluation she performed, she reached the opinion that Delacruz suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Dr. Gaines explained that psychiatric literature supports that past behavior is a good indicator of future behavior, especially when past behavior has been repeated.

10

Dr. Gaines diagnosed Delacruz with pedophilic disorder, antisocial personality disorder, and substance abuse disorder, stating that Delacruz's substance abuse disorder is in remission while he is in a controlled environment. Dr. Gaines reported that Delacruz admitted that when he was 26 or 27, he touched his eight- and nine-year-old nieces over and under their clothing, that he massaged their breasts and vaginal areas, and filmed them showering and undressing. Dr. Gaines considered the fact that the victims were young and vulnerable to be a significant risk factor. Because the incidents occurred approximately ten times over a period of two years, Dr. Gaines found his sexual deviance to be a pattern of repeated, pervasive acts, another risk factor for reoffending. Dr. Gaines expressed concern that Delacruz blames his victims as being the initiators, describes his offenses as joking around, and has a pattern of obtaining sexual arousal from prepubescent girls.

Dr. Gaines testified that Delacruz's back to back offenses constitute "persistence after punishment," and that Delacruz did not seem to be remorseful. Dr. Gaines identified as protective factors that Delacruz is doing well in a structured environment, appears to have a support system, and is currently in a sex-offender treatment program while incarcerated. However, considering all the factors, both risk and protective, Dr. Gaines opined that based on her training, education and experience, Delacruz has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

In his second issue on appeal, Delacruz argues that the evidence was legally insufficient to support the jury's verdict. Specifically, Delacruz claims that a rational juror could not find beyond a reasonable doubt, that he is a sexually violent predator because the jury was not told that the Act was "directed at a small, extremely dangerous group of persons who are not amenable to traditional treatment." *See* Tex. Health & Safety Code § 841.001 (setting forth

11

legislative finding that civil commitment procedure for sexually violent predators is necessary and in interest of state because of existence of small but extremely dangerous group of sexually violent predators with behavioral abnormality that is not amenable to traditional mental illness modalities that make them likely to engage in repeated predatory acts of sexual violence and for whom existing involuntary commitment procedures of Texas Health and Safety Code are inadequate to address risk they pose to society).

In evaluating the sufficiency of the evidence under the standard applied in criminal cases, sufficiency of the evidence should be measured by the elements as defined by the hypothetically correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In a civil commitment case, the reviewing court "look[s] to see if a rational fact finder could have found, beyond a reasonable doubt, the elements required for the commitment under [the Act]." *In re Commitment of Mullens*, 92 S.W.3d at 885. Under the Act, the State must prove that a person is a sexually violent predator beyond a reasonable doubt. *See* Tex. Health & Safety Code § 841.062(a) ("The judge or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator."). A person is a sexually violent predator under the Act if the person (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id*. § 841.003(b); *see also id.* § 841.002(8) (defining "sexually violent offense" to include, among other things, indecency with a child by contact, as defined by Texas Penal Code section 21.11(a)(1)). The Act defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to

12

commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). The Act defines "predatory act" as "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

Relying on the legislative findings stated in section 841.001, Delacruz argues that the absence of evidence that he is part of a small but extremely dangerous group of persons who are not amenable to traditional treatment causes the evidence to be legally insufficient to support the jury's finding that he is a sexually violent predator. Delacruz cites no law—and we find none—holding that the legislative findings stated in section 841.001 constitute elements of the sexually violent predator determination that the State must prove to secure a jury finding that a person is a sexually violent predator.

The Legislature specifically defined the relevant term—"sexually violent predator"— as a "repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). The Legislature also specifically defined "behavioral abnormality" and "predatory act," and neither of these definitions references the language used in the legislative findings in section 841.001. Nor do the definitions refer to the inappropriateness of traditional mental illness treatment modalities as an element of the definitions. *See id.* § 841.002(2), (5) (defining "behavioral abnormality" and "predatory act," respectively). The Act does not include any reference to a small, extremely dangerous group of people who are not amenable to traditional mental illness treatment in its definitions of "sexually violent predator," "behavioral abnormality," or "predatory act." Whether Delacruz is a member of the group mentioned in the Legislature's statutory findings is not an element of the sexually violent predator determination that the State

13

was required to prove. *See In re Commitment of Williams*, 539 S.W.3d 429, 438 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that "[t]he Act plainly provides the elements for a sexually violent predator determination" in sections 841.062(a), 841.003(a), and 841.002, not in section 841.001). The absence of evidence related to the Legislative findings does not render legally insufficient the evidence supporting the jury's finding that Delacruz is a sexually violent predator. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that Delacruz suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence *See Stuteville*, 463 S.W.3d at 551-52. We therefore hold that the State presented legally sufficient evidence that Delacruz was likely to reoffend and commit a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a). We overrule Delacruz's second issue.

In his third issue on appeal, Delacruz asserts that the evidence was factually insufficient to support the jury's finding that he is a sexually violent predator. First, Delacruz asserts that the evidence showed that Delacruz committed a sex offense as a juvenile at age 15 and did not commit another until he was in his mid-twenties. Delacruz argues that this demonstrates "persistence after punishment" on one occasion as opposed to multiple occasions. There is no requirement, however, that "persistence after punishment" occur more than once for a forensic psychologist to consider it a risk factor for reoffending. Moreover, Delacruz omits that there was evidence that after committing the sex offense at age 15—indecency with a child by contact involving his nine-year-old niece—Delacruz's probation was revoked after he committed an assault with a deadly weapon in a manner that Dr. Thorne testified was sexually deviant.

14

Delacruz also argues that the evidence did not demonstrate that he had "a history of multiple sexual offenses over an extended period of time" or a pattern of "well-ingrained" offending behavior. Again, there is no requirement that this evidence exist in order to support a forensic psychologist's conclusion that a person is likely to reoffend. The statute requires only proof of two prior convictions and that a sentence have been imposed in at least one of them. *See id.*; *In re Joiner*, No. 05-18-01001-CV, 2019 WL 4126602, at *9 (Tex. App.—Dallas Aug. 30, 2019, pet. denied) (mem. op.) ("To find the evidence factually insufficient because he did not have more than two sexual-assault convictions would constitute adding an element to the sexually violent predator statute, which courts may not do."). Dr. Thorne and Dr. Gaines explained the bases for their conclusions that Delacruz was likely to reoffend, including, but not limited to, his history of committing violent crimes against numerous victims. Dr. Gaines testified that she considered Delacruz's sexual deviance to be a pattern of repeated pervasive acts based on his having fondled his eight- and nine-year-old nieces ten times over a two-year period.

Delacruz also argues that he was not diagnosed as a psychopath, that he was serving the sentence imposed on him for his sex offense convictions, and that he was currently doing well in a nine-month treatment program at TDCJ. This is an accurate characterization of some of the evidence presented at trial. However, having reviewed all the evidence presented at trial, we conclude that the jury was rationally justified in making the sexually violent predator determination beyond a reasonable doubt, and we cannot conclude that "the risk of an injustice remains too great to allow the verdict to stand." *See Stuteville*, 463 S.W.3d at 551-52. We therefore hold that the State presented factually sufficient evidence that Delacruz was likely to

reoffend and commit a predatory act of sexual violence. *See* Tex. Health & Safety Code § 841.003(a). We overrule Delacruz's third issue.[2]

In his first issue, Delacruz complains of the trial court's exclusion of testimony and evidence that he maintains was related to the legislative findings contained in section 841.001 of the Act. We review the trial court's exclusion of evidence under the abuse of discretion standard. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). A trial court abuses its discretion when it acts without regard for any guiding rules. *Id.* Delacruz first complains that the trial court improperly sustained the State's objection when counsel for Delacruz asked Dr. Gaines if she agreed that "[the Act] is targeting those who are not amenable to traditional [mental illness treatment modalities]." *See* Tex. Health & Safety Code § 841.001. The trial court's ruling on this objection was not an abuse of discretion. As previously discussed, the legislative findings in section 841.001 do not add to the elements of the sexually violent predator determination. Thus, Dr. Gaines's understanding of what language is contained in section 841.001 is not relevant to the issue before the jury—whether Delacruz is a sexually violent predator under the relevant provisions of the Act. *See* Tex. R. Evid. 401 (evidence is relevant if it has any tendency to make fact of consequence in determining action more or less probable than it would be without it), 402 (relevant evidence is generally admissible). In his brief, Delacruz speculates that the court's ruling deprived him of an opportunity to elicit testimony that would discredit Dr. Gaines's opinion that the treatment programs Delacruz could participate in at TDCJ would be inadequate to sufficiently reduce his likelihood to reoffend. The

---

[2] Because we conclude that the evidence is legally and factually sufficient in the present case, we need not address the State's argument that factual sufficiency review should be abandoned in civil commitment cases where the State's burden of proof is beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (abandoning factual sufficiency review in criminal cases where State's burden of proof is beyond reasonable doubt).

trial court's ruling sustaining the State's objection to Delacruz's question about Dr. Gaines's understanding of section 841.001 did not, however, foreclose Delacruz from questioning Dr. Gaines about why she believed that the treatment Delacruz received at TDCJ would not sufficiently reduce his likelihood to reoffend. Delacruz did not question Dr. Gaines about that topic.[3] The trial court did not abuse its discretion in sustaining the State's objection.

Delacruz's second complaint is that the trial court sustained the State's objection to a question posed to Delacruz about whether the State had filed its petition to civilly commit him before he had begun any mental illness treatment program. The State objected on relevance grounds. Delacruz argues that the answer to this question was relevant because it would demonstrate that Delacruz had not refused to participate in a treatment program and that, by sustaining the objection, the trial court prevented Delacruz from "clearing up probable misconceptions about his treatment opportunities" and showing that his failure to have completed treatment by the time of trial was not his fault. To support this argument, Delacruz points out that during deliberations, the jury sent a note asking how long treatment has been available to Delacruz and whether it was available for his entire sentence. We see no correlation between the timing of the State's filing the petition and Delacruz's treatment opportunities nor do we perceive how the timing of filing the petition is relevant to the sexually violent predator determination. Moreover, by sustaining this objection the trial court did not foreclose Delacruz's counsel from asking him the particulars of his treatment while incarcerated, including what

---

[3] Delacruz also failed to make an offer of proof that would inform this Court of the substance of Dr. Gaines's testimony on this topic so as to show error requiring reversal. *See* Tex. R. Evid. 103(a); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 278 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("If the trial court sustains an objection and rules the evidence inadmissible, an appellant must preserve error by making a record, through a bill of exceptions, of the precise evidence the party desires admitted.").

17

opportunities he had and when treatment was first available to him. Counsel did not ask those questions and did not make an offer of proof that would inform this Court of the testimony that the question would have elicited. We conclude that the trial court did not abuse its discretion by sustaining either of the State's objections. We overrule Delacruz's first appellate issue.

## CONCLUSION

Having overruled each of Delacruz's three appellate issues, we affirm the trial court's judgment and order of commitment.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: December 16, 2020